IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL DAVID PEYTON | § | |
| VS. | § | CIVIL ACTION NO. 1:22-cv-36 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Michael David Peyton, proceeding *pro se*, filed this Motion to Vacate, Set Aside or Corect Sentence pursuant to 28 U.S.C. § 2255. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

In 2018, pursuant to a plea of guilty, Movant was convicted of conspiring to possess methamphetamine with the intent to distribute. He was sentenced to 292 months of imprisonment. The United States Court of Appeals for the Fifth Circuit affirmed the conviction and sentence, but remanded the case for the limited purpose of ensuring that the conditions of supervised release set forth in the judgment were consistent with the district court's oral pronouncement at sentencing. *United States v. Peyton*, 837 F. App'x 304 (5th Cir. 2021).

Grounds for Review

Movant asserts he received ineffective assistance of counsel on appeal. He states counsel should have challenged the amount of methamphetamine he was held to be responsible for at sentencing. Movant further contends counsel should have challenged an increase in his offense level based upon possession of a weapon.

The Offense

In connection with his plea of guilty, Movant signed a Factual Basis and agreed that the document accurately described the events that occurred and his actions. The Factual Basis described the offense as follows:

> On or about April 1, 2017, agents with the Houston FBI began investigating a suspected methamphetamine trafficker who was suspected of trafficking large amounts of methamphetamine in the Houston and Beaumont, TX., areas as well as other areas across the United States. This suspected methamphetamine trafficker was known to the FBI as Sarah Alred and agents began surveillance of Alred at her known address in [the] Houston, Texas, area. During this surveillance, agents observed extensive traffic at that residence, which they believed, based on their training and experience, to be consistent with drug distribution.
>
> On April 7, 2017, a Confidential Informant (CI) made arrangements with Sarah Alred to purchase two ounces of methamphetamine from Alred at a designated location in Houston, Texas. The CI met with Alred at that location and a short time later, an unidentified male (UM), walked into the location and met with Alred. Agents observed Alred hand the UM her car keys and then observed the UM take a package out of Alred's vehicle and put it in his vehicle. The UM then returned Alred's keys to Alred and left the location. A short time later, Alred left the location then the CI left the location and met the agents at a pre-determined location. The CI returned the buy-money to the agents and advised that Alred said she did not have any "work" (methamphetamine) because her runner had just taken the last of it out of her (Alred's) car. Alred advised the CI that he/she could purchase it later from the runner or return to Alred's house to get the ounce.
>
> On April 17, 2017, the CI arranged to make a two-ounce purchase of methamphetamine from Alred at her home in Houston, TX. The CI met with Alred at her residence but Alred only had one ounce of methamphetamine available to sell to the CI at that time. Alred advised the CI that she had accidentally left a kilogram of methamphetamine in a hotel room the night before and was going back to retrieve it. Once she got it, she could deliver the other ounce. The CI purchased the ounce and turned it over to FBI agents who then submitted it to the DEA South Central Crime Lab where it was determined to be 26.73 grams of actual methamphetamine.
>
> Law enforcement then conducted surveillance on Alred as she left her residence in a silver Acura and traveled to the Marriott North in Houston, TX., and went inside the hotel. A short time later, a Hispanic female arrived at the location carrying a large bag that appeared to be full. As the Hispanic female left the hotel the vehicle she was traveling in was stopped by law enforcement. The occupants were identified as Victor Garcia (driver) and Martha Hernandez (passenger). A search of the vehicle revealed approximately one (1) gram of cocaine in the passenger door and approximately $23,780 in U.S. currency under the back seat.
>
> As surveillance continued of Alred at the Marriott North hotel, law enforcement observed another vehicle (BMW) arrive at the hotel. The driver and sole occupant of that vehicle was identified as Michael Peyton, a/k/a "Payday." Peyton was observed entering the lobby of the hotel carrying a green camouflaged backpack.

Approximately 40 minutes later, a stolen silver Toyota Tundra arrived at the hotel with one male and one female occupant. They were observed going into the lobby of the hotel and returned to the Toyota Tundra less than 20 minutes later. Peyton was then observed with his green camouflaged backpack getting into the passenger compartment of the Toyota Tundra and staying in the Tundra for approximately ten (10) minutes before exiting the Tundra and entering the driver's seat of the silver Acura that Alred drove to the hotel.

In the meantime, Alred and anther female, later identified as Windemere Simmons, were observed leaving the hotel and getting into the silver Acura and the vehicle departed the hotel parking lot. The vehicle was stopped for a traffic violation a short distance away and the driver was identified as Peyton, the front seat passenger was identified as Alred, and the rear seat passenger was identified as Simmons. Peyton was found to have less than 1 gram of methamphetamine on his person. A certified drug-detecting K9 was run on the vehicle and alerted to the presence of the odor of illegal narcotics in the vehicle. Officers located a green camouflaged backpack, previously observed being used by Peyton, containing 68.63 grams of actual methamphetamine. Simmons claimed a black purse as hers and it was found to contain a .40 cal. Smith and Wesson handgun and a plastic bag containing 4.29 grams of actual methamphetamine. Alred claimed ownership of the white backpack also found in the vehicle which contained a ledger that was identified by narcotic experts as "drug notes." Officers also located $5,348 in U.S. currency in a black bag located in the front passenger seat. All defendants were placed under arrest. Both Alred and Simmons were found to have room keys for the Marriot North hotel, room 1222 in their pockets.

It was determined that room 1222 of the Marriott North hotel was rented under the name of Wendimere Simmons. Simmons provided officers with written consent to search the room and both Simmons and Peyton advised that Alred had left a large amount of methamphetamine in room 1222.

A search of that room revealed a red purse found underneath a mattress to contain approximately 1/2 kilogram of methamphetamine inside, a black purse under the table next to the television which contained methamphetamine paraphernalia and 2 black drug ledgers, a black backpack under the same table with approximately 1.58 kilograms of methamphetamine, a Tupperware bowl containing approximately 42 grams of methamphetamine, a baggie containing approximately 42 grams of methamphetamine under the dresser/night stand, a white bag labeled "Girl Boss" that contained approximately 33.5 grams of methamphetamine and two baggies of approximately 44.6 grams of marihuana. The methamphetamine seized from this hotel room was submitted to the DEA South Central Lab and was determined to be methamphetamine "actual" in a total amount of 2.33 kilograms.

Michael Peyton is personally responsible for the possession with the intent to distribute and/or the distribution of at least 50 grams of methamphetamine "actual" as part of this conspiracy.

*United States v. Alred*, 1:17-cr-69 (E.D. Tex. 2017) (doc. #85 at 2-4).

Analysis

*Substantive Standard*

In order to establish an ineffective assistance of counsel claim, a movant must prove counsel's performance was deficient, and that the deficient performance prejudiced the movant's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Because a movant must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, a movant must prove counsel's performance was objectively unreasonable in light of the facts of the case. *Strickland*, 466 U.S. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, a movant must also show prejudice resulting from the inadequate performance. *Strickland*, 466 U.S. at 691-92. A movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Application*

A. Amount of Methamphetamine

In connection with sentencing, Movant was found to be responsible for 2.4 kilograms of methamphetamine (actual). *Alred*, (doc. #103 at 6). This total included the following amounts: (1) 68.63 grams found in the green backpack; (2) 4.29 grams found in Simmons' purse and (3) 2.33 kilograms found in the hotel room. *Id*. at 4-5. Movant appears to concede he is responsible for the single gram of methamphetamine found in his possession and the 68.63 grams found in the green

4

backpack. However, he asserts appellate counsel should have argued that he was not responsible for the remaining methamphetamine.

Movant pled guilty to conspiring with Alred and Simmons to possess methamphetamine with the intent to distribute. The quantity of drugs involved in an offense includes the drugs for which a defendant is directly responsible and the drugs that can be attributed to him in a conspiracy. U.S.S.G. § 1B1.3(a)(1). Also included is the amount that can be attributed to him in a conspiracy. *Id*. For conspiratorial conduct to be attributed to a defendant, the co-conspirator's conduct must be reasonably foreseeable to the defendant. *United States v. Carreon*, 11 F.3d 1225, 1230 (5th Cir. 1994).

The Factual Basis stated Movant and Simmons told law enforcement officers that Alred had left a large amount of methamphetamine in the hotel room. This statement demonstrates Movant knew about the methamphetamine in the hotel room and knew it belonged to one of his co-conspirators. There is nothing in the record to support the argument that Alred bringing a large amount of methamphetamine to the hotel room was not reasonably foreseeable to Movant. Moreover, there is no indication it was not reasonably foreseeable that, as part of the conspiracy to distribute methamphetamine, Simmons, another co-conspirator, would have methamphetamine in her purse.

Movant contends appellate counsel should have asserted that he should not have been held responsible for a portion of the methamphetamine seized by law enforcement officers. However, the Factual Basis signed by Movant works against such an argument and there is nothing in the record that would support the argument. As a result, counsel's failure to make this argument did not fall below an objective standard of reasonableness and did not result in prejudice.

*Firearm*

In accordance with Section 2D1.1(b)(1) of the Sentencing Guidelines, Movant's offense level was increased by two points based on possession of a firearm. Movant contends he should not have been held responsible for the firearm found in Simmons' purse. He states he had no connection with

the firearm, did not know Simmons had a weapon and never exercised dominion and control over the firearm. Movant asserts appellate counsel should have argued that the increase in his offense level was improper.

Section 2D1.1(b)(1) provides that if "a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The commentary to this Section states the enhancement should be applied "if the weapon was present, unless it is clearly improbably that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. (n.11(A)). Possession can be established if the defendant could have reasonably foreseen that some other person involved in the offense would possess the weapon. *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010). As firearms are "tools of the trade" for those engaged in illegal drug activities, a district court

> may ordinarily infer that a defendant should have foreseen a co-defendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed the weapon while he and the defendant committed the offense by jointly engaging in concerted criminal activity involving a quantity of narcotics sufficient to support and inference of an intent to distribute.

*United States v. Aguilera-Zapata*, 901 F.2d 1209, 1215 (5th Cir. 1990).

Here, the Factual Basis signed by Movant stated the firearm was found in the purse of a co-defendant who was also a co-conspirator. The co-defendant was carrying the purse in a vehicle driven by Movant. A backpack containing 68.63 grams of methamphetamine was in the vehicle. In addition, 4.29 grams of methamphetamine were in the co-defendant's purse.

The Factual Basis establishes Movant's co-defendant knowingly possessed the firearm while she and Movant were engaged in criminal activity. As the co-defendants were engaged in transporting drugs, it was reasonably foreseeable that at least one of them would be carrying a firearm. Accordingly, appellate counsel would have had no basis to argue that the increase in Movant's offense level based upon possession of a firearm was improper. Counsel's failure to make such an argument therefore did not fall below an objective standard of reasonableness or result in prejudice.

<u>Recommendation</u>

This Motion to Vacate, Set Aside or Correct Sentence should be denied.

<u>Objections</u>

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

**SIGNED this the 16th day of May, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE